UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DAVID CHARLES PERIO | CIVIL ACTION |
| versus | NO. 10-336 |
| TERREBONNE PARISH SHERIFF'S OFFICE, ET AL. | SECTION "F" |

<u>ORDER AND REASONS</u>

Before the Court is defendant Sheriff L. Vernon Bourgeois's motion for summary judgment.  For the reasons that follow, the motion is GRANTED.

<u>Background</u>

This is an employment discrimination lawsuit in which David Charles Perio alleges that newly-elected Sheriff Vernon Bourgeois demoted him because of his race and, ultimately, terminated his employment as a correctional officer in retaliation for filing a complaint of discrimination.  Perio also charges that the newly-elected sheriff violated his First Amendment right to free speech when he was demoted and then fired because Perio had campaigned and voted for the newly-elected sheriff's unsuccessful opponent.

David Perio, an African American, was hired as a correctional officer on August 19, 1998 by then-Sheriff Larpenter.  He worked his way up through the ranks at the Terrbonne Parish Sheriff's Office, eventually being promoted to Lieutenant in the Recreation Department.  However, he was demoted (from Lieutenant to Deputy),

effective July 1, 2008, and then -- following an internal affairs investigation and recommendation from the disciplinary board -- ultimately, his employment was terminated on March 2, 2009.

Over the course of Perio's 20 years of employment with the TPSO:

• Perio was offered but turned down promotions on four occasions (September 19, 1996, January 28, 1998, February 25, 2002 and April 7, 2003).

• Perio was promoted twice (on May 20, 1999 from deputy to sergeant and on February 23, 2004 from sergeant to lieutenant).

• Perio received a number of disciplinary write-ups:

  (1) on December 23, 1993, Perio received an official written reprimand for failing to attend roll call;

  (2) on February 16, 1996, Perio was suspended with pay pending an investigation for insubordination and threats and following the investigation, he was issued a letter of reprimand;

  (3) on January 25, 2000, Perio was the subject of an incident report, which accused Perio of making a racial issue out of the reporter deputy's allegedly putting a black inmate in lockdown for fighting with another inmate;

  (4) on March 1, 2002, Perio was written up by Deputy Wilton Leon when he questioned Leon's arrest of Michael Zilton

for domestic violence against his wife and suggested that "some of the deputies around here should be arrested for beating their wives", implying that Leon falsely arrested Zilton because he was black;

(5)   on July 24, 2002, Perio was written up for improper conduct after complaining that, because he was black, Deputy Darla Domangue (a white female) failed to take care of Perio's being paid for overtime work;

(6)   on August 19, 2002, Perio was written up by Deputy Hazel LeBlanc (white female) for claiming that he would be docked for medical time off but that a white deputy (Deputy Trevis Adams) would not be docked;

(7)   on August 28, 2002, Perio was written up by Captain Gerald Ledet (white male) for failing to follow instructions in the performance of his duties at the jail;

(8)   The most recent three evaluations of Perio's job performance (dated June 20, 2006, October 24, 2006, and July 30, 2007) rated his performance as "good" and explained that he generally ran his department "very well."

(9)   on February 2, 2007, Perio was written up for yelling at Deputy Josier Derosier (black male) for refusing to open a dorm room in the jail;

(10) on February 1, 2008, Perio was written up for telling
Deputy Dawn Domangue (white female) to mind her own
business regarding an inmate she was processing for
release;

(11) on April 17, 2008, Perio was written up by Lieutenant Jed
Boquet (white male) for commenting that Deputy Mike
Thomas (black male), because of his race, was being made
to strip search a homosexual inmate; and

(12) on May 15, 2008, Perio was written up for unprofessional
conduct (rudeness) toward Corporal Samantha Torres (white
female) and Deputy Melanie Kibodeaux (white female).

These personnel actions preceded Sheriff Bourgeois's term of
office.

Sheriff Bourgeois took office on July 1, 2008. During the
campaign leading up to his election, Perio had taken part in the
parish sheriff election as a private citizen; Sheriff Bourgeois had
"heard" that Perio supported Sheriff Bourgeois's rival during the
campaign. Bourgeois won. On the same day that Sheriff Bourgeois
took office, Perio was demoted from lieutenant to deputy, which
resulted in a pay decrease of approximately $400 per month.[1] The
record shows that Sheriff Bourgeois "replaced Deputy Perio in the
Recreation Department with Sergeant Arnell White, a black male, who

---

[1]The determination was made on June 27 but did not take
effect until Sheriff Bourgeois officially took office on July 1,
2008.

4

supervises two white deputies and whom [the Sheriff] has since promoted twice."[2]

The parties seem to dispute the nature and number of other employees that were demoted or terminated by Sheriff Bourgeois when he took office.[3] Perio contends that the only other custodial employees demoted or terminated by Sheriff Bourgeois when he assumed office, besides Perio, were the warden (who was given the option of retiring) and an executive secretary, who was demoted for poor job performance, which the Sheriff knew about "[f]rom years of experience of working with her."[4] The record evidence also suggests that, effective July 1, 2008, one Major Dean, whom the Sheriff knew to have considered running against him during the campaign (but who did not run), was transferred to the jail and, although he retained his rank as Major, was not given the pay increase that the other majors were given. Sheriff Bourgeois has submitted an affidavit, in which he states, besides Perio, he

---

[2]This is according to a sworn affidavit submitted by Sheriff Bourgeois.

[3]Perio contends that, when asked in discovery to identify the employees demoted within six months of Bourgeois taking office, that the Sheriff could identify only three: Perio, Paul Hebert, and Mark Lirette.

[4]Of these employees, Perio contends, he was the only one thought by the Sheriff to have participated in another candidate's campaign, and he was the only one demoted in the absence of any performance issues. (The Sheriff maintains that Perio was demoted for performance issues and terminated for conduct unbecoming an officer.)

demoted or caused to retire a total of 13 members of the Sheriff's Office, all of whom were white:

> At the same time [he, Sheriff Bourgeois] demoted Lieutenant Perio to Deputy [he, the Sheriff] demoted or caused to retire a total of thirteen (13) other members of the Sheriff's Office, all of whom were white. Lieutenant Perio was the only black employee...demoted upon taking office as Sheriff. At the same time [he, the Sheriff] demoted Lieutenant Perio [and the demoted or forced to retire thirteen white employees, he, the Sheriff] promoted four black employees: Malcolm Wolf (from Captain to Major...); Darlene Duncan (promoted from Deputy to Sergeant); Sharon Miller (promoted from Deputy to Sergeant); and Celeste Jackson (promoted from Deputy to Sergeant).[5]

On December 1, 2008 Perio filed a charge of discrimination with the Equal Employment Opportunity Commission[6] for his demotion; Perio asserted that he:

---

[5]The Court sees no suggestion in the record as to when these demotions of white employees took effect, except as to Major Dean. The defendant identifies each of these 13 white employees, by name, in footnote 30 of his statement of uncontested material facts: Major Mike Dean, Warden Joe Null, Lieutenant Sidney Simmons, Lieutenant Sheila Guidry, Lieutenant Danny Theriot, Lieutenant James Daigle, Major Sele Roddy, Major Huey Euia, Major Thomas Odom, Captain Ronald Bergeron, Barbara Ledet, Cheryl Allemand, and Donna Blanchard.

   In opposition to the defendant's motion for summary judgment, Perio lists as a contested material fact that Sheriff demoted or caused to retire 13 other members of the Sheriff's department, noting that during discovery, only three individuals were identified (when it was asked to identify employees demoted within six months of Bourgeois taking office). He does not request that the Court strike the evidence submitted by the defendant, although it appears that he suggests that this evidence was not made available to him during discovery.

[6]Several years earlier, on April 3, 1996, Perio had filed an EEOC charge of discrimination, asserting race discrimination when he was not promoted to Corporal. The charge was dismissed and not further pursued.

was demoted from Lieutenant to a Deputy position and removed from my position over the Recreation Department....

To my knowledge, Vernon Bourgeois, White, Sheriff, stated that he demoted me because he heard that I campaigned and voted for his opponent in his election.

I believe that I was demoted because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended, in that:

A.    A White Major who considered running against Bourgeois was not demoted although Bourgeois knew about it.
B.  I was the only employee to be demoted.
C.  My performance evaluations were rated as "excellent" for several years and I have not had any disciplinary actions taken against me.


In mid-January 2009 an intoxicated black inmate, James M. Scott, Jr. (Inmate Scott) was brought into the jail after being arrested and charged with DWI, resisting arrest, and open container violations.  While in custody at the Terrebonne Parish Criminal Justice Complex, and before Perio arrived at work, Inmate Scott got into a physical altercation with four of the officers working shift.  One of the officers twice tasered Scott in an attempt to get him under control.  Inmate Scott continued to be combative, however; as he was being escorted to a restraining chair, he allegedly became more violent and one of the officers used a spray on him, to assist in the officers' efforts to restrain him.[7]  Once

---

[7]As a result of this incident, Inmate Scott pleaded no contest to four counts of battery on correctional officers on March 9, 2010.

7

he was restrained to the chair, he remained there until he was transported to the hospital to be treated for his injuries. Sometime while Inmate Scott was restrained to the chair at the jail, other officers including Perio and Deputy Dakota Fitch had contact with him; Lieutenant Paul Hebert was also on duty at that time and was Perio's and Fitch's immediate supervisor.  Deputy Fitch and Lieutenant Hebert have testified that, before Inmate Scott was taken to the hospital, they heard Perio say, in Inmate Scott's presence, that the officers on duty better write good reports because Inmate Scott and his family had money.[8]  Lieutenant Hebert verbally reprimanded Perio (telling him to watch what he says in front of the inmates), but did not otherwise write him up.

On February 23, 2009 Perio participated in an EEOC mediation with a TPSO representative concerning his charge of racial discrimination relating to his demotion.  At that time Perio was informed that his demotion was due to unsatisfactory job performance.[9]  The mediation was unsuccessful.  Three days later,

---

[8]Deputy Dakota Fitch claims that he also overheard Perio suggest to Inmate Scott that what happened to him at the jail was "bullshit" and that he should call his parents and sue the Sheriff's department.  Perio denies this, and suggests that Deputy Fitch was his notorious enemy and insists that Fitch's animosity toward Perio motivated him to make this claim.

[9]During this litigation, counsel for the Sheriff first asserted in an answer to an interrogatory inquiring the reason Perio was demoted that "This information is included in plaintiff's personnel file, a copy of which is being produced...Sheriff Bourgeois determined that there was no need for a Lieutenant to serve as the Recreation Officer."  In summary judgment papers,

on February 26, 2009, Perio received notice of a disciplinary board meeting scheduled on March 2, 2009 relating to the Inmate Scott incident.   Shortly after the incident with Inmate Scott, Sheriff Bourgeois had ordered an internal affairs investigation into a charge of conduct unbecoming an officer made against Perio.[10]   A formal statement was filed accusing Perio of suggesting that Inmate Scott should sue the Sheriff's Department.   Lieutenant Fanguy conducted the investigation, which was followed by the Sheriff appointing a disciplinary board of three TPSO officers, Lieutenant Mark Arcenaux, Sergeant Charles Clark, and Lieutenant Lillian Dupuy, to consider the charge and recommend the appropriate discipline if the charge was found to have merit.

On March 2, 2009, the disciplinary board met with Perio (but not his accusers) regarding the charge; Perio denied all of the accusations.   The board requested that he undergo a computerized voice stress analysis.   Perio agreed to undergo the analysis, but wanted his lawyer to be present; because his attorney was not

_____

consistent with the representation apparently made during the EEOC mediation, counsel for Perio has asserted that Perio was demoted because of his job performance.   Sheriff Bourgeois's own deposition testimony is more vague: when asked whether there was an investigation on his part preceding his decision to demote Perio, the Sheriff stated "I went over the folder of many ranking people at the Sheriff's Office and decided who was going to be where when I became sheriff."

[10]Apparently, Deputy Fitch reported to Lieutenant Justin Hall what he claims to have overheard Perio say to Inmate Scott; Hall told Fitch to draft a report of the incident.

available on such short notice, the disciplinary board conducted
the disciplinary hearing without the voice stress analysis.[11]   The
disciplinary board interviewed Perio regarding the charge, which
Perio denied, and unanimously recommended that Perio's employment
be terminated.   The Sheriff agreed with the board's recommendation
and terminated Perio's employment for conduct unbecoming an officer
on that same date -- March 2, 2009.[12] Perio was provided written
notice of his termination that day.

---

[11]Perio has not asserted a claim for a due process
violation.

[12]Perio contends that other correctional officers were
treated differently (i.e., not terminated for a first offense of
conduct unbecoming an officer):
- on November 24, 2008 Deputy Chad Ledet (a white male) was
  investigated for conduct unbecoming an officer after he
  fired his weapon into the door of his officer vehicle
  while on duty; he was given a letter of reprimand and
  required to pay the insurance deductible for the damage
  to his vehicle.
- on August 5, 2008 Deputy Gregory Gobert was investigated
  for conduct unbecoming an officer; he was suspended for
  one day for (in his words) "messing with a chick on
  duty."
- on July 7, 2008 Deputy Gobert was found to be behind on
  vehicle maintenance to his officer vehicle and he was
  ordered by Sheriff Bourgeois to pay for the insurance
  deductible.
- on August 27, 2009 Deputy Gobert was again investigated
  for conduct unbecoming an officer regarding a complaint
  by a 19-year-old female claiming that he had come to her
  residence unannounced and she felt intimidated by his
  presence; Gobert admitted to texting the woman and going
  to her residence; the board recommended that he be
  terminated and Sheriff Bourgeois terminated his
  employment that day.

10

Two days later, Perio filed another charge of discrimination, this time based on alleged retaliation arising out of his March 2 termination, asserting that "I believe I have been discriminated against and in retaliation for filing a previous EEOC complaint." On December 7, 2009 the EEOC issued Perio a notice of right to sue letter as to his demotion charge.[13]  On February 8, 2010 Perio, *pro se*, sued the Terrebonne Parish Sheriff's Office, Sheriff Vernon Bourgeois, Lieutenant Mark Arceneaux, Lieutenant Justin Hall, Deputy Dakota Fitch, and Captain Erlin Fanguy, Jr.  On April 28, 2010 Perio enrolled counsel on his behalf and, on October 22, 2010, Perio's counsel requested leave to file a first amended complaint; his request was granted.  In his first amended complaint, Perio named only Sheriff Bourgeois,[14] individually and in his official capacity, and asserted that the Sheriff demoted him because of his race, retaliated against him by terminating his employment because he had complained about the racial discrimination, and also that the Sheriff terminated his employment because Perio had campaigned against the Sheriff, in violation of 42 U.S.C. § 1983.  Perio seeks damages including back pay and benefits, reinstatement or front pay with benefits, general damages, interest, attorney's fees, costs,

---

[13]Eventually, in January 2011, a notice of right to sue letter was sent to Perio concerning his termination charge as well.

[14]Defendants Lieutenant Mark Arceneaux, Lieutenant Justin Hall, Deputy Dakota Fitch, and Captain Erlin Fanguy, Jr. have since been dismissed from the case, by Perio's motion.

and all other available damages.   The Sheriff now seeks summary judgment dismissing the plaintiff's claims.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.   No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.   See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).   A fact issue is "material" if its resolution could affect the outcome of the action.   Hamilton v. Seque Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000).   A "genuine" issue of material fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.   See id.   Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.   Id. at 249-50 (citations omitted).   Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.   See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).   In this regard, the non-moving party

12

must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the Court must read the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255.

II.

A.

*Title VII Race Discrimination*

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's...race."  42 U.S.C. § 2000e-2(a)(1).

    1.   The Summary Judgment Burden-Shifting Framework for Disparate Treatment Based on Race

The "modified" McDonnell Douglas burden-shifting framework applies to Title VII race discrimination claims where there is no direct evidence of discrimination.  Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc., 482 F.3d 408, 411 (5th Cir. 2007)(citing Rachid v. Jack In The Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004)). This three-part test allocates the burden of proof by first

13

requiring the plaintiff to present a prima facie case of discrimination.  To establish a prima facie case, must show that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly-situated employees outside the protected class.  Id. at 411-412; McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the employee establishes his prima facie case of discrimination, a presumption of discrimination arises and the burden shifts to the employer to produce a legitimate, nondiscriminatory justification for its actions.  Burrell, 482 F.3d at 411. The defendant can satisfy its burden "by producing evidence, which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).  If the defendant discharges its burden, "the mandatory inference of discrimination created by the plaintiff's prima facie case drops out." Id.  "This burden of production 'can involve no credibility assessment.'" Raggs v. Mississippi Power & Light Co., 278 F.3d 463, 468 (5th Cir. 2002)(quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)).

Finally, if the defendant meets his burden of production, the burden shifts back to the employee to show by a preponderance of the evidence that either (1) the employer's nondiscriminatory

14

explanation is pretextual or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another "motivating factor" is the employee's protected characteristic. See Burrell, 482 F.3d at 412.[15]  To defeat summary judgment on the pretext alternative, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision."  Price, 283 F.3d at 720. "Pretext may be shown by any evidence which demonstrates the employer's proffered reason is false."  Burrell, 482 F.3d at 412 n.11 (citing Gee v. Principi, 289 F.3d 342, 347-48 (5th Cir. 2002)(an employer's inconsistent explanations for its employment decisions at different times permits a jury to infer that the employer's proffered reasons are pretextual.")).  "Although the evidentiary burdens shift between the parties in this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" See Raggs, 278 F.3d at 468 (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

    2.  Application

    Sheriff Bourgeois assumes, for the purposes of summary judgment, that Perio can establish a prima facie case of disparate

---

[15]The parties' papers confirm that this is solely a "pretext" case.

treatment based on race concerning his July 1, 2008 demotion.  The
Court finds this curious, considering that there is no record
evidence tending to establish the fourth element of the plaintiff's
prima facie case; that is, there is no evidence showing that Perio
was treated less favorably than similarly-situated employees
outside of the protected class.   In fact, the defendant submits
evidence that Perio was not the only employee demoted; Sheriff
Bourgeois demoted or caused to retire 13 other employees, all of
whom were white.   Moreover, the Sheriff has submitted sworn
evidence that he replaced Perio in the Recreation Department with
a black man.   This evidence belies Perio's claim that he was
treated differently because of his race.

      However, assuming as the parties do, that Perio can satisfy
his prima facie case, Perio cannot credibly dispute that the
Sheriff has proffered a legitimate, non-discriminatory reason for
his demotion: the Sheriff asserts that Perio was demoted for poor
performance reasons and transferred based on the personnel needs of
the TPSO.[16]   The Court cannot evaluate the credibility of this

_____

      [16]Perio contends that the only defense put forth for his
demotion (that of business necessity) is prohibited by Title VII in
disparate treatment cases: "a demonstration that an employment
practice is required by business necessity may not be used as a
defense against a claim of intentional discrimination under this
subchapter."   42 U.S.C. § 2000e-2(k)(2).   However, the record
undermines Perio's contention that the only defense asserted by the
Sheriff was one of business necessity.  Cf. Jackson v. Watkins, 619
F.3d 463, 468 n.5 (5th Cir. 2010)(noting that in "holding that [the
plaintiff] has not met his summary-judgment burden is not an
endorsement of [the defendant's] decision to terminate [the

explanation. Rather, Perio must show that the Sheriff's proffered reason is pretextual that instead the employment decision was made with a discriminatory motive.  He seeks to do so by suggesting that the defendant has offered inconsistent explanations at different times during the litigation.  The Court disagrees.  The record does not show that the Sheriff's explanation for firing Perio has shifted.  While his comments in his deposition are vague, he does not offer a conclusively opposite explanation for Perio's demotion; it has consistently been tied to poor performance, which is amply supported by the record.  Moreover, even if Perio could raise an issue of fact, "if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred," the plaintiff has failed to prove an essential element of his case and summary judgment is appropriate.  See Price v. Fed. Exp. Corp., 283 F.3d 715, 724 (5th Cir. 2002) (quoting Reeves, 530 U.S. 133, 148 (2000)); see also P.V. Patel, M.D. v. Midland Memorial Hosp. and Med. Center, 298 F.3d 333, 342 (5th Cir. 2002)(citation omitted)(requiring evidence of racial animus to prove discrimination, noting that once such a case reaches the pretext stage, "'the question for summary judgment is whether a

---

plaintiff], a veteran prosecutor with seventeen years of experience. But it is not our place to second-guess the business decisions of an employer, so long as those decisions are not the result of discrimination.").

rational fact finder could find that the employer discriminated against the plaintiff[] on the basis of race'"). Perio's subjective belief that the Sheriff demoted him because of his race is insufficient to raise an issue of material fact on summary judgment, and is indeed undermined by the evidence in the record.

B.
*Title VII Retaliation*

Under Title VII, "an employer may not discriminate against an employee because the employee has 'opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." See LeMaire v. La. Dep't of Transp. & Dev., 480 F.3d 383, 388 (5th Cir. 2007)(omission in original)(quoting 42 U.S.C. § 2000e-3).

1. The Summary Judgment Burden-Shifting Framework for Retaliatory Termination

Like employment discrimination claims, retaliation claims are governed by the McDonnell Douglas burden-shifting framework. Id. (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under that framework, an employee must first establish a prima facie case of retaliation by showing that: (1) he engaged in a protected activity; (2) that his employer took an adverse employment action; and (3) that a causal link exists between the protected activity and the adverse employment action. McCoy v. City of Shreveport, 492 F.3d 551, 556-57 (5th Cir.

2007).  If the employee makes such a showing, the familiar burden-shifting framework identified above applies: the employer must articulate legitimate, non-discriminatory reasons for its employment action and then, if articulated, the burden shifts back to the employee to show that the employer's proffered reasons are a pretext for its actual retaliatory purpose.[17]  <u>See</u> <u>id.</u>

    2.  Application

    The Sheriff first disputes whether Perio can establish a causal link between his complaint of race discrimination and his termination.  The Sheriff insists that there is no evidence of a link between the two, and that the plaintiff cannot simply rely on the temporal proximity of his EEOC complaint to the termination decision.  The Court agrees.  <u>See</u>, <u>e.g.</u>, <u>Beattie v. Madison Co. Sch. Dist.</u>, 254 F.3d 595, 605 (5th Cir. 2001)(timing alone does not create an inference that termination is retaliatory).

    Assuming however for the purposes of the motion, that Perio has made out a prima facie case of retaliation, it cannot reasonably be disputed that the defendant has proffered a legitimate, non-retaliatory reason for Perio's termination: as a result of an internal investigation of the Inmate Scott incident, the board recommended, and the Sheriff agreed, that Perio's employment should be terminated for conduct unbecoming an officer.

_____

        [17]Again, the parties did not suggest that the mixed-motive analysis applies to Perio's Title VII retaliation claim.

Again, because the Court may not examine the credibility of the proffered explanation, and because the Sheriff's submission of the underlying facts about Perio's termination is sufficient to constitute a legitimate, non-discriminatory reason, the burden shifts to the plaintiff to establish that the employer's stated reason is a pretext for the real (retaliatory) purpose.

Perio seeks to show that his termination for conduct unbecoming an officer was merely a pretext and that the Sheriff truly fired him because he participated in Title VII protected activity -- filing a complaint that he was demoted because of his race. Perio filed the charge of discrimination in December 2008 and was terminated on March 2, 2009. He suggests that the temporal proximity is suggestive of retaliatory motive. He has submitted no evidence in support of his burden to show retaliatory motive,[18] relying instead on the alleged temporal proximity between his complaint and termination and his own personal conclusion that other employees were treated differently; he has not even shown that these employees were similarly situated, let alone "nearly

---

[18]Plaintiff's claim that Fitch was his sworn enemy and out to get even is what he focuses his termination claim on. But, according to the parties' pre-trial order, his only "evidence" is his own subjective belief and a video of Fitch apparently sleeping on duty. Nothing more. Even if the video somehow passed the Rule 403 test and was admitted at trial, its probative value, if any, would be substantially undermined by the record evidence that Fitch did not make the decision to terminate Perio, not to mention that Lieutenant Hebert also testified that he heard Perio make a statement in Inmate Scott's presence alluding to the Sheriff Office's potential liability exposure for their treatment of Scott.

identical." <u>See</u> <u>Williams v. Trader Publ'g Co.</u>, 218 F.3d 481, 484 (5th Cir. 2000)("[t]hat employees' situations must be nearly identical means...that the misconduct they engaged in must be nearly identical."); <u>see also</u> <u>Harris v. Mississippi Transp. Comm'n</u>, 329 Fed.Appx. 550, 556 (5th Cir. July 21, 2009)(unpublished)(citation omitted)(noting that "[d]isparate treatment is indeed one way of demonstrating unlawful retaliation, but the conduct that led to the plaintiff's termination must be 'nearly identical to that engaged in by an employee not within [his] protected class whom the company retained"). Perio's evidence of pretext is insufficient to withstand summary judgment; he fails to show that, but for his EEOC complaint, his employment would not have been terminated. <u>See</u> <u>Strong v. University Healthcare Sys., L.L.C.</u>, 482 F.3d 802, 807-09 (5th Cir. 2007)(determining that none of the plaintiff's examples involve a similarly situated employee sufficient to show but-for causation and plaintiff's only other argument regarding temporal proximity failed because that alone is insufficient to prove but-for causation).

*C.*
*Section 1983*

Perio finally claims, apparently as an alternative to his Title VII race discrimination and retaliation claims, that Sheriff Bourgeois, while acting under color of state law, fired him in retaliation for Perio's support of Sheriff Bourgeois's rival

21

candidate, thereby intentionally depriving him of his rights under the U.S. Constitution.

To prove a First Amendment retaliation claim, the plaintiff must prove by a preponderance of evidence that (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his "interest in commenting on matters of public concern ... outweigh[s] the defendant's interest in promoting efficiency"; and (4) his speech motivated the adverse employment decision.  Beattie v. Madison County Sch. Dist., 254 F.3d 595, 601 (5th Cir. 2001)(citing Harris v. Victoria Indep. Sch. Dist., 168 F.3d 216, 220 (5th Cir. 1999), cert. denied 528 U.S. 1022, 120 S.Ct. 533, 145 L.Ed.2d 413 (1999)).  If the plaintiff shows that he engaged in protected conduct and that it was a motivating factor in his adverse employment action, then "the burden shifts to the defendant[] to show by a preponderance of the evidence that they would have come to the same conclusion in the absence of the protected conduct."  Id. (citation omitted).

Sheriff Bourgeois does not dispute the first three elements of Perio's claim for the purposes of summary judgment; rather, he contends that Perio cannot show that his speech motivated his adverse employment decision.  The Court agrees.

Even assuming that Perio has stated a claim of First Amendment

retaliation for both his demotion and his termination,[19] the plaintiff has not shown that, or created an issue of fact regarding whether, his speech motivated the adverse employment decisions. First, the only evidence he has tying his speech to the Sheriff is a statement by the Sheriff, when asked during his deposition, that he might have heard something about Perio supporting another candidate during the campaign. Regarding his demotion, while the fact that Perio was demoted effective the day the Sheriff took office is noted, the law is clear that "[t]iming alone does not create an inference that the [adverse employment action] is retaliatory." Beattie v. Madison County Sch. Dist., 254 F.3d 595, 605 (5th Cir. 2001) (citations omitted). Regarding his termination, suspicious timing is no longer on his side; Perio maintains that the sole factual basis for the Inmate Scott investigation came from his notorious enemy and that no one has been discharged for a first offense of conduct unbecoming an officer.[20] But a personal and conclusory challenge to the facts underlying an employer's independent termination justification falls short of showing retaliation. Cf. Harris v. Mississippi Transp. Comm'n, 329

---

[19]The Court's reading of the complaint makes clear that the plaintiff has only claimed that his termination (and not his demotion) was in retaliation for his political support of a rival candidate.

[20]Again, Perio provides examples of others facing disciplinary action for misconduct very different from that charged to Perio.

Fed.Appx. 550, 557 (5th Cir. July 21, 2009) (unpublished)(citation omitted)(noting that simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of fact as to pretext); see also Beattie, 254 F.3d at 603 ("[e]ven if speech on a matter of public concern was a substantial or motivating factor in the termination, a defendant may escape liability by demonstrating that it would have taken the same action in the absence of the protected conduct").[21]  Perio's claim is based on speculation, at best.  Because Perio cannot establish an essential element of his First Amendment retaliation claim, and a reasonable jury could not find for him as a matter of law, summary judgment is appropriate.

Accordingly, the defendant's motion for summary judgment is GRANTED.  The plaintiff's claims are hereby dismissed.

New Orleans, Louisiana, April 29, 2011.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[21]It is also worth noting that Perio seems to be overlooking a fact that makes his claim a bit more subjective and tenuous: while Sheriff Bourgeois indisputably made the ultimate decision to terminate Perio's employment, a three-member board unanimously recommended termination following an investigation in to the Inmate Scott incident.  There is no evidence to suggest that any of the members of the board or anyone involved in the investigation had any special loyalty to Sheriff Bourgeois's prior campaign.  Rather, the record supports the fact that the board recommendation and ultimate termination decision were rendered regardless of Perio's prior campaign activities.